## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALFRED MARZAN, an individual; ADELAIDA LIWANAG MARZAN, an individual, | ) ) ) | CIVIL NO. 10-00581 JMS/BMK |
| | ) | ORDER: (1) GRANTING |
| Plaintiffs, | ) ) | DEFENDANT OLD REPUBLIC TITLE & ESCROW OF HAWAII, LTD.'S MOTION TO DISMISS; |
| vs. | ) ) | (2) GRANTING DEFENDANT MORTGAGE ELECTRONIC |
| BANK OF AMERICA, Business Entity, et al., | ) ) | REGISTRATION SYSTEM'S MOTION TO DISMISS; |
| | ) | (3) DISMISSING OTHER CLAIMS; |
| Defendants. | ) | AND (4) GRANTING LEAVE TO |
| _____ | ) | AMEND |

**ORDER: (1) GRANTING DEFENDANT OLD REPUBLIC TITLE & ESCROW OF HAWAII, LTD.'S MOTION TO DISMISS; (2) GRANTING DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEM'S MOTION TO DISMISS; (3) DISMISSING OTHER CLAIMS; AND (4) GRANTING LEAVE TO AMEND**

## I. INTRODUCTION

On October 6, 2010, Plaintiffs Alfred Marzan and Adelaida Liwanag Marzan ("Plaintiffs"), proceeding *pro se*, filed this action against Defendants Bank of America ("BOA"); Countrywide Home Loans, Inc. ("Countrywide"), First Magnus Financial ("First Magnus"), Old Republic Title & Escrow, Ltd. ("Old Republic"), and Mortgage Electronic Registration Systems ("MERS") (collectively, "Defendants") alleging federal and state law claims stemming

primarily from a March 14, 2006 mortgage transaction concerning real property located at 94-102 Heahea Street, Waipahu, Hawaii 96797 (the "subject property").

Plaintiffs seek declaratory and injunctive relief, as well as damages and rescission of the mortgage transaction. In separate motions, Old Republic and MERS each seek dismissal of all counts against them. For the reasons set forth below, the court GRANTS the Motions and dismisses the Complaint with leave to amend as to certain counts. Given obvious defects as to all Defendants, the dismissal is as to all claims against all Defendants.

## II. BACKGROUND

### A. Factual Background

The court assumes the Complaint's factual allegations are true for purposes of this Motion. *See, e.g.*, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

According to the Complaint and documents of which the court takes judicial notice, on March 10, 2006, Plaintiffs entered into a loan repayment and security agreement with First Magnus, which was subsequently transferred to Countrywide and/or BOA. *See* Compl. ¶ 2. Plaintiffs' claims stem from the consummation of this transaction.

Plaintiffs assert, among other things, that (1) First Magnus qualified

Plaintiffs for a loan which it knew Plaintiffs were not qualified for and could not repay, and that Plaintiffs "should have been declined for this loan," Compl. ¶¶ 21, 27-28, 34; (2) the terms of the transaction were not clear and Defendants[1] never explained the transaction to them, *id.* ¶¶ 24, 29; (3) the loan was more expensive than alternative financing arrangements for which Plaintiffs were qualified, *id.*; and (4) Defendants charged excessive or illegal fees. *Id.* ¶¶ 22, 31.

Plaintiffs assert that Defendants failed to provide forms and disclosures required under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; the Equal Opportunity Credit Act; "Fair Lending/Fair Debt Collection Act"; and the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* Compl. ¶¶ 11, 13. Defendants allegedly "intentionally concealed the negative implications of the loan they were offering," *id.* ¶ 18, and "failed to perform due diligence," *id.* ¶¶ 20, 27, such that Plaintiffs were sold "a deceptive loan product" and the acts of deception created an illegal loan and constituted predatory lending. *Id.* ¶¶ 26-27, 39. Defendants' acts allegedly were in violation of federal and state law, including bad faith, breach of fiduciary duty, and unfair and deceptive trade practices.

---

[1] The Complaint often improperly fails to distinguish between Defendants as to alleged causes of action. To provide proper notice, any Amended Complaint should allege necessary facts against specific Defendants, *i.e.*, tie each claim to a Defendant and explain how each Defendant is liable.

**B.     Procedural Background**

Plaintiffs' October 6, 2010 Complaint alleges twelve separate counts, entitled:  "(1) Declaratory Relief; (2) Injunctive Relief; (3) Contractual Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Violations of TILA; (5) Violations of RESPA; (6) Rescission; (7) Unfair and Deceptive Acts and Practices (UDAP); (8) Breach of Fiduciary Duty; (9) Unconscionability; (10) Predatory Lending; (11) Quiet Title; and (12) Lack of Standing (MERS)."

On November 19, 2010, Old Republic filed its Motion to Dismiss seeking dismissal of all counts.[2]  On December 6, 2010, MERS filed its Motion to Dismiss.  On February 4, 2011, Plaintiffs filed an Opposition.  Replies were filed on February 7, 2011.  A hearing was held on February 28, 2011.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans*

---

[2]  Bank of America, Countrywide, and First Magnus have not appeared in the action.

*Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

The court liberally construes pro se pleadings. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). "Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

Despite the liberal pro se pleading standard, the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on its own motion. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim *sua sponte* under [Rule] 12(b)(6). Such a dismissal may be

made without notice where the claimant cannot possibly win relief."); *Ricotta v. California*, 4 F. Supp. 2d 961, 968 n.7 (S.D. Cal. 1998) ("The Court can dismiss a claim *sua sponte* for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."); *see also Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) (holding that a district court may dismiss cases *sua sponte* pursuant to Rule 12(b)(6) without notice where plaintiff could not prevail on complaint as alleged).

## IV.  DISCUSSION

Many of the arguments raised by Old Republic and MERS were addressed in this court's recent Order in *Phillips et al. v. Bank of America et al.*, 2011 WL 240813 (D. Haw. Jan. 21, 2011), regarding a similar complaint.[3]  The court draws extensively from that Order.

Both Motions address each of the Counts as they relate to MERS and Old Republic, and the court therefore addresses the arguments as to each specific Count.[4]

---

[3] Multiple complaints have been filed with the court by pro se plaintiffs, all alleging the same twelve causes of action and attaching a "Forensic Audit Report" by Francha Services, LLC.

[4] The Complaint also mentions the Equal Opportunity Credit Act, Compl. ¶ 25; the "Fair Lending/Fair Debt Collection Act," *id.* ¶ 11; and the Federal Trade Commission Act, *id.* ¶¶ 11, 40, and makes generalized allegations regarding "fraud" or "fraudulent" conduct.  *Id.* ¶¶ 43, 57, 86, 99, 100.  Plaintiffs, however, assert no claims for relief (*i.e.*, no Counts) for any

(continued...)

**A.     Counts I and II -- Declaratory and Injunctive Relief**

Both MERS and Old Republic contend, among other things, that Count I (Declaratory Relief) and Count II (Injunctive Relief), fail to state claims upon which relief can be granted because the claims are remedies, not independent causes of action.  MERS Mot. 5-6; Old Republic Mot. 6.  The court agrees that these Counts fail to state a claim.

Initially, the court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action.  *See, e.g.*, *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action"); *Henke v. Arco Midcon, L.L.C.*, --- F. Supp. 2d ---- , 2010 WL 4513301, at *6 (E.D. Mo. Nov. 2, 2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Plan Pros, Inc. v. Zych*, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) (same).

---

[4](...continued)
alleged violations of those federal laws or for a stand-alone fraud claim.  The Complaint as written therefore fails to state a claim for violations of those statutes or for fraud.  *Cf. Bautista v. Los Angeles County*, 216 F.3d 837, 840-41 (9th Cir. 2000) ("Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.") (citations omitted).

Injunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action.

As for declaratory relief, Count I is apparently seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.[5]  Count I alleges that "[a]n actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contend[] that Defendants did not have the right to foreclose on the Subject Property[.]"  Compl. ¶ 43.  Plaintiffs ask the court to declare that "the purported power of sale contained in the Loan [is] of no force and effect at this time" because of "numerous violations of State and Federal laws designed to protect borrowers[.]"  *Id.* ¶ 44.  "As a result of Defendants' actions, Plaintiffs have suffered damages . . . and seek[] declaratory relief that Defendants' purported power of sale is void[.]"  *Id.* ¶ 45.

Given these allegations, Plaintiffs' declaratory relief claim is not cognizable as an independent cause of action under the Declaratory Relief Act.

---

[5] The Declaratory Judgment Act provides in pertinent part:

> a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

*See Seattle Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." (citation and quotation signals omitted)).  That is, because Plaintiffs' claims are based on allegations regarding Defendants' past wrongs, a claim under the Declaratory Relief Act is improper and in essence duplicates Plaintiffs' other causes of action.  *See, e.g.*, *Ballard v. Chase Bank USA, NA*, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief "rises or falls with [the] other claims.") (citation omitted); *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.");  *Ruiz v. Mortg. Elec. Registration Sys., Inc*., 2009 WL 2390824, at *6 (E.D. Cal. Aug. 3, 2009) (dismissing claim for declaratory judgment where foreclosure already occurred such that the plaintiff was seeking "to redress past wrongs"); *Edejer v. DHI Mortg. Co.*, 2009 WL 1684714, at *11 (N.D. Cal. June 12, 2009) ("Plaintiff's declaratory relief cause of action fails because she seeks to redress past wrongs rather than a declaration as to future rights.").

Accordingly, the court DISMISSES Counts I and II without leave to amend.  If Plaintiffs eventually prevail on an independent claim, the court will necessarily render a judgment setting forth (*i.e.*, "declaring") as such and providing appropriate remedies.  Similarly, if injunctive relief is proper, it will be because Plaintiffs prevail -- or have met the necessary test for such relief under Rule 65 of the Federal Rules of Civil Procedure -- on an independent cause of action.  Although only MERS and Old Republic have moved to dismiss, this dismissal is as to all Defendants because Plaintiffs cannot prevail on these Counts as to any Defendant.

## B.    Count III -- Covenant of Good Faith and Fair Dealing

Count III is entitled "Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing."  Plaintiffs allege that every contract imposes a duty of good faith and fair dealing "in its performance and its enforcement," Compl. ¶ 52, and that Defendants "willfully breached their implied duty of good faith and fair dealing" by engaging in the acts alleged in the Complaint (such as withholding disclosures or information, and "willfully plac[ing] Plaintiffs in a loan that [they] did not qualify for").  *Id.* ¶ 55.

This claim asserts the tort of "bad faith."  *See Best Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith

for breach of implied covenant of good faith and fair dealing in an insurance contract). But, although bad faith is an accepted tort where the plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based upon a mortgage loan contract.

"In *Best Place*, the Hawaii Supreme Court noted that although Hawaii law imposes a duty of good faith and fair dealing in all contracts, whether a breach of this duty will give rise to a bad faith tort cause of action depends on the duties inherent in a particular type of contract." *Jou v. Nat'l Interstate Ins. Co. of Haw.*, 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (citing *Best Place*, 82 Haw. at 129, 920 P.2d at 334). "The court concluded that special characteristics distinguished insurance contracts from other contracts and justified the recognition of a bad faith tort cause of action for the insured in the context of first- and third-party insurance contracts." *Id.* (citing *Best Place*, 82 Haw. at 131-32, 920 P.2d at 345-46). Indeed, "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in *Best Place*, requires a contractual relationship between an insurer and an insured." *Id.* (citing *Simmons v. Puu*, 105 Haw. 112, 120, 94 P.3d 667, 675 (2004)).

Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this

obligation does not create an independent cause of action. *See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006). And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." *Id.* at 1037 (quoting *Francis v. Lee Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)). It is thus unlikely that Plaintiffs could recover for bad faith as alleged in Count III.

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed." *Contreras v. Master Fin., Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. *See Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Thus, because all of Count III's allegations concern pre-contract

activities (failing to disclosure terms, failing to conduct proper underwriting, making an improper loan to Plaintiffs), Defendants cannot be liable for bad faith. *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

And, even if Plaintiffs are attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" *Id.* (quoting *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735, 742 (1989)).

Accordingly, Count III is DISMISSED. Because further amendment would be futile, dismissal of Count III is without leave to amend. This dismissal is as to all Defendants.

## C.      Count IV -- TILA

MERS and Old Republic make different arguments on this claim and

the court therefore addresses these arguments separately.

### 1.    *TILA Claim Against Old Republic*

Old Republic argues that its only role in the loan transaction was as escrow agent such that it cannot be held liable for TILA violations. The court agrees.

TILA allows a plaintiff to seek damages from a "creditor," 15 U.S.C. § 1640, or rescission from an assignee. 15 U.S.C. § 1641(c). Old Republic only performed escrow services for the loan transaction, *see* Compl. Ex. A, and was neither a creditor nor an assignee. As such, Old Republic cannot be liable for TILA violations. *See, e.g.*, *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 589 F. Supp. 2d 987, 992 (N.D. Ill. 2008) (dismissing TILA claims against escrow company reasoning that TILA "imposes no such duty" and "TILA burdens only *creditors* with disclosure obligations") (citations omitted); *Manuel v. Discovery Home Loans, LLC*, 2010 WL 2889510, at *3 (N.D. Cal. July 22, 2010) (reasoning that because "neither [escrow holder nor loan servicer] was obligated to make TILA disclosures in connection with Plaintiffs' loan, neither party can be liable for violations of TILA"); *Phleger v. Countrywide Home Loans, Inc.*, 2008 WL 65771, at *6 (N.D. Cal. Jan. 4, 2008) (dismissing TILA claim because "[a]n escrow agent is not . . . a creditor for purposes of TILA") (citations omitted).

Accordingly, the court GRANTS Old Republic's Motion to Dismiss Count IV of the Complaint against it without leave to amend as to Old Republic.

**2.      TILA Claim Against Other Defendants**

MERS argues, among other things, that Plaintiffs' TILA claims for damages and for rescission are time-barred.

*a.      Damages under TILA*

Any claim for damages under TILA must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  For violations of TILA's disclosure requirements, this one-year period generally begins to run from the date of consummation of the loan.  *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986).  Equitable tolling may nonetheless apply in certain circumstances:

> [T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.  Therefore, as a general rule, the limitations period starts at the consummation of the transaction.  The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

*Id.* Where the basis of equitable tolling is fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999).

On its face, Plaintiffs' TILA claim for damages against MERS is time-barred unless equitable tolling applies -- it was brought over four years from consummation of the loan transaction. The Complaint asserts only that the statute of limitations was tolled "due to Defendants' failure to effectively provide the required disclosures and notices." Compl. ¶ 62. Even if true, this allegation is insufficient to satisfy equitable tolling because it would establish no more than the TILA violation itself. *See, e.g.*, *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) ("[T]he mere existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations."); *Jacob v. Aurora Loan Servs.*, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010) ("Plaintiff cannot rely on the same factual allegations to show that Defendants violated federal statutes and to toll the limitations periods that apply to those statutes. Otherwise, equitable tolling would apply in every case where a plaintiff alleges violations of TILA . . . and the statutes of limitations would be meaningless.").

The Complaint pleads no facts indicating that MERS (or any Defendant) prevented Plaintiff from discovering the alleged TILA violation or

caused Plaintiff to allow the filing deadline to pass. *See, e.g.*, *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006) ("Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Without any factual allegations that support the inference that Plaintiffs did not have a reasonable opportunity to discover the TILA violations, the Complaint, even when liberally construed, does not support tolling the statute of limitations. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (granting leave to amend complaint to allege lack of reasonable notice to establish diligence where the facts alleged did not foreclose lack of reasonable notice as a matter of law); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902-03 (9th Cir. 2003) (rejecting argument for equitable tolling of the TILA claim because plaintiff was in full possession of all loan documents and did not allege any actions that would have prevented discovery of the alleged TILA violations).

Accordingly, the court DISMISSES Plaintiffs' TILA claim for damages, but grants Plaintiffs leave to amend as to all Defendants except for Old

Republic.

                *b.*     *Rescission under TILA*

As to Plaintiffs' claim for rescission pursuant to TILA, Compl. ¶ 65, TILA provides a right to rescind a loan transaction "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing [the required material disclosures.]" 15 U.S.C. § 1635(a). If the required disclosures are not provided, however, the right to rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]" 15 U.S.C. § 1635(f).[6] Section 1635(f) is an absolute statute of repose barring "any [TILA rescission] claims filed more than three years after the consummation of the transaction." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (citing *King*, 784 F.2d at 913). That is, the three-year period is not subject to equitable tolling. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (stating that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period," even if a lender failed to make the required disclosures).

---

[6] A transaction is "consummated" when a consumer becomes contractually obligated. *See Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989) (citing 12 C.F.R. § 226.2(a)(13)).

Plaintiffs' TILA claim for rescission as to MERS is based on a March

10, 2006 loan transaction. Plaintiffs filed this action over four years later. Given

that equitable tolling cannot apply to this claim, any amendment seeking rescission

would be futile.

Accordingly, the court DISMISSES Plaintiffs' claim for rescission

pursuant to TILA as time-barred without leave to amend. This dismissal is as to all

Defendants.

## D.    Count V -- RESPA

Count V alleges a violation of RESPA. Specifically, the Complaint

alleges against all Defendants that (1) "the fees for this loan were . . . egregious,"

Compl. ¶ 74, (2) a Yield Spread Premium was "excessive," *id.* ¶ 75, and

(3) "Defendants, and each of them, did give, provide or receive a hidden fee or

thing of value for the referral of settlement business, including but not limited to,

kickbacks, hidden referral fees, and/or Yield Spread Premiums." *Id.* ¶ 76. The

Complaint, therefore, is making a RESPA claim under 12 U.S.C. § 2607, for illegal

fees at closing.[7]

Initially, to the extent that Count V claims Defendants received

_____

[7] Any possible claims for violations of 12 U.S.C. §§ 2603 or 2604 for failing to provide a "good faith estimate" or "uniform settlement statement" necessarily fail because there is no private cause of action for a violation of those sections. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557 (9th Cir. 2010).

"excessive" fees, that claim under RESPA fails as a matter of law -- § 2607 does not prohibit "excessive" fees. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 554 (9th Cir. 2010) (concluding that § 2607 "cannot be read to prohibit charging fees, excessive or otherwise, when those fees are for services that were actually performed").

As to other aspects of § 2607, MERS and Old Republic assert that a RESPA claim is time-barred and the allegations otherwise fail to state a claim upon which relief can be granted. The court agrees that the allegations of the Complaint are wholly conclusory and fail to state a claim that is plausible on the face of the Complaint. Further, as pled, the claim appears time-barred.

Specifically, the statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation. The one-year period applies to a claim under § 2607. Specifically, 12 U.S.C. § 2614 provides:

> Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . .

Although the Ninth Circuit has not addressed the precise issue, other courts -- including this court -- have found that equitable tolling may apply to a RESPA claim. *See Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *4 (D. Haw. Nov. 24, 2010) (citing cases).

As with Plaintiffs' claim for damages under TILA, Plaintiffs brought this action well past either the applicable statute of limitations for RESPA violations. Any illegal fee would have occurred in 2006; this action was filed in 2010. Moreover, the Complaint includes no allegations suggesting that equitable tolling may apply.

Accordingly, the court DISMISSES Plaintiffs' RESPA claim. The dismissal is without leave to amend as to (1) any claim under § 2607 asserting a fee was "excessive" or otherwise for services that were actually performed, or (2) any claim under §§ 2603 or 2604. Allowing such amendments would be futile. *See Martinez*, 598 F.3d at 554, 557. Otherwise, the dismissal is with leave to amend. Again, the dismissal -- without leave to amend as to claims for "excessive" fees or under §§ 2603 or 2604, and with leave to amend otherwise -- is as to all Defendants.

**E.     Count VI -- Rescission**

Count VI asserts that "Plaintiffs are entitled to rescind the loan for all

of the foregoing reasons: 1) TILA Violations; 2) RESPA; 3) Fraudulent

Concealment; 4) Deceptive Acts and Practices (UDAP) and 5) Public Policy

Grounds, each of which provides independent grounds for relief." Compl. ¶ 79.

Like Counts I and II, generally "[r]escission is only a remedy, not a cause of

action." *Bischoff v. Cook*, 118 Haw. 154, 163, 185 P.3d 902, 911 (Haw. App.

2008). The remedy thus "rises or falls with [the] other claims." *Ballard*, 2010 WL

5114952, at *8. Indeed, as alleged here, Count VI specifically acknowledges that

it is seeking rescission based upon "independent grounds for relief."

Accordingly, Count VI is DISMISSED without leave to amend. The

court addresses the merits of rescission separately, when addressing any

independent claims allowing rescission. The dismissal is as to all Defendants.

## F.     Count VII -- Unfair and Deceptive Acts and Practices

Count VII alleges that all Defendants are liable for Unfair and

Deceptive Acts and Practices "by consummating an unlawful, unfair, and

fraudulent business practice, designed to deprive Plaintiffs of [their] home, equity,

as well as [their] past and future investment." Compl. ¶ 86. Plaintiffs allege that

Defendants "failed to undergo a diligent underwriting process," failed to disclose

matters, should not have approved their loan because they could not afford it, and

had "knowledge of these facts, circumstances and risks but failed to disclose

them." *Id.* ¶ 84. By alleging "Unfair and Deceptive Acts and Practices," Plaintiffs are making a claim under HRS § 480-2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.").

Without more, Plaintiffs' theory of an unfair practice does not state a claim under § 480-2. In granting summary judgment against a borrower on a § 480-2 claim, this court in *McCarty v. GCP Management, LLC*, 2010 WL 4812763 (D. Haw. Nov. 17, 2010), relied on the rule that "lenders generally owe no duty to a borrower 'not to place borrowers in a loan even where there was a foreseeable risk borrowers would be unable to repay.'" *Id.* at *6 (quoting *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)).

And, as cited in *McCarty*, ample authority supports this proposition. *See Sheets v. DHI Mortg. Co.*, 2009 WL 2171085, at *4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for a lender 'to determine the borrower's ability to repay the loan . . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's.'" (quoting *Renteria v. United States*, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) (finding that borrowers "had to rely on their own judgment and risk assessment to

determine whether or not to accept the loan")). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Cal. App. 1991). Nothing in the Complaint indicates that any Defendant "exceed[ed] the scope of [a] conventional role as a mere lender of money." The claims fails on that basis alone.

MERS also argues that this claim is barred by the applicable four-year statute of limitations. *See* HRS § 480-24(a) (barring a chapter 480 claim "unless commenced within four years after the cause of action accrues"). Because the cause of action here accrued on March 14, 2006, the four-year statute of limitations has run unless Plaintiffs can take benefit of tolling the statute of limitations. *See, e.g.*, *Rundgren v. Bank of N.Y. Mellon*, 2011 WL 768800, at *5-7 (D. Haw. Feb. 28, 2011) (finding that claims brought pursuant to Ch. 480 may take benefit of the fraudulent concealment doctrine to toll the statute of limitations). The § 480-2 claim was filed over six months late, and the Complaint includes no allegations suggesting that equitable tolling may apply. The court, however, cannot conclude at this time that further amendment is futile and will allow Plaintiffs an opportunity to amend Count VII to attempt to state a § 480-2 claim.

Accordingly, Count VII is DISMISSED with leave to amend. The dismissal is as to all Defendants.

## G.     Count VIII -- Breach of Fiduciary Duty

Count VIII alleges, without distinguishing between various Defendants, that Defendants owe Plaintiffs a fiduciary duty and breached that duty by failing "to advise or notify Plaintiffs . . . that Plaintiffs would or had a likelihood of defaulting on the loan." Compl. ¶ 89. Defendants also allegedly breached a fiduciary duty owed to Plaintiffs by "exercis[ing] a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another[.]" *Id.* ¶ 90. Plaintiffs also allege that failure to provide material disclosures "while in the capacity of [Plaintiffs'] Lender" and "fail[ure] to fully comply with TILA and RESPA . . . are violations of a fiduciary responsibility owed to Plaintiffs by Defendants." *Id.* ¶¶ 91-92.

These allegations fail to state a claim against MERS and any Defendant lenders. In *McCarty*, this court set forth a myriad of case law for the well-settled proposition that generally a borrower-lender relationship is not fiduciary in nature:

> Lenders generally owe no fiduciary duties to their borrowers. *See, e.g.*, *Nymark v. Heart Fed. Sav. & Loan*

> Ass'n, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The
> relationship between a lending institution and its
> borrower-client is not fiduciary in nature."); *Miller v.*
> *U.S. Bank of Wash.*, 865 P.2d 536, 543 (Wash. App.
> 1994) ("The general rule . . . is that a lender is not a
> fiduciary of its borrower."); *Huntington Mortg. Co. v.*
> *DeBrota*, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A
> lender does not owe a fiduciary duty to a borrower absent
> some special circumstances."); *Spencer v. DHI Mortg.*
> *Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009)
> ("Absent 'special circumstances' a loan transaction 'is at
> arms-length and there is no fiduciary relationship
> between the borrower and lender.'") (quoting *Oaks*
> *Mgmt. Corp. v. Super. Ct.*, 51 Cal. Rptr. 3d 561 (Cal.
> App. 2006)); *Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365,
> 373 (D. D.C. 2008) ("[T]he relationship between a debtor
> and a creditor is ordinarily a contractual relationship . . .
> and is not fiduciary in nature.") (citation omitted).

*McCarty*, 2010 WL 4812763, at *5.

Given this rule, Plaintiffs fail to state a claim for breach of fiduciary

duty against MERS and several of the other Defendants (First Magnus, Bank of

America, and Countrywide).[8]  As with a § 480-2 claim, nothing in the Complaint

alleges "special circumstances" that might impose a fiduciary duty in this

---

[8] Unlike lenders, brokers generally owe fiduciary duties to their clients. *See, e.g.*,
*Mortensen v. Home Loan Ctr., Inc.*, 2009 WL 113483, at *4 (D. Ariz. Jan. 16, 2009) (citing
cases indicating that mortgage brokers have fiduciary duties to their clients); *Brewer v. Indymac*
*Bank*, 609 F. Supp. 2d 1104, 1119 (E.D. Cal. 2009) (same); *cf. Han v. Yang*, 84 Haw. 162, 172,
931 P.2d 604, 614 (Haw. App. 1997) ("A real estate broker is a fiduciary and consequently must
exercise the 'utmost good faith, integrity, honesty, and loyalty,' and must diligently uphold a
legally imposed duty of due care.") (citations omitted).  Because Plaintiffs do not assert any
allegations establishing that any of the Defendants were acting in the capacity as a broker, the
court need not determine if Plaintiffs could state a claim against a broker.

mortgage-lending situation against these Defendants. *See, e.g.*, *Shepherd v. Am. Home Mortg. Servs., Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) ("Plaintiff cites no authority for the proposition that AHMSI or Deutsche owed a duty to not cause plaintiff harm in their capacities as servicer and [successor] to the original lender in ownership of the loan, respectively. . . . In fact, loan servicers do not owe a duty to the borrowers of the loans they service.").

　　　　As to Old Republic, a title and escrow company, the "[g]eneral rule is that [an] escrow depository occupies [a] fiduciary relationship with parties to [the] escrow agreement or instructions and must comply strictly with the provisions of such agreement or instructions." *Stanton v. Bank of Am., N.A.*, 2010 WL 4176375, at *3 (D. Haw. Oct. 19, 2010) (quoting *DeMello v. Home Escrow*, 4 Haw. App. 41, 47, 659 P.2d 759, 763 (1983) (citation omitted). But, "an escrow holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful compliance with [the depositors'] instructions." *Id.* (quoting *Summit Fin. Holdings, Ltd. v. Continental Lawyers Title, Co.*, 27 Cal. 4th 705, 711 (Cal. 2002)). The Hawaii Supreme Court has found that where a party to a transaction in which an escrow is utilized engages in fraudulent activity, an escrow is not liable when it acts in good faith and does not have actual knowledge of wrongdoing. *Matter of Bishop, Baldwin, Rewald, Dillingham &*

*Wong, Inc.*, 69 Haw. 523, 529, 751 P.2d 77, 78, 81 (Haw. 1988). The Complaint

includes no allegations supporting that Old Republic breached any fiduciary duty

to Plaintiffs, by, for example, failing to follow the provisions of any particular

agreement or instructions.

Accordingly, Count VIII is DISMISSED with leave to amend as to all

Defendants.

## H.    Count IX -- Unconscionability

MERS and Old Republic next argue that Count IX entitled

"Unconscionability  -- UCC-2-3202 (sic 2-302)" fails to state a claim. Count IX

asserts that courts may refuse to enforce a contract or portions of a contract that are

unconscionable, Compl. ¶ 97, and courts are to give parties an opportunity to

present evidence regarding a contract's "commercial setting, purpose and effect" to

determine if a contract is unconscionable. *Id.* ¶ 98. It alleges the following facts:

> Here, based on the deception, unfair bargaining position,
> lack of adherence to the regulations, civil codes and
> federal standards that the Defendants were required to
> follow; coupled with the windfall that the Defendants
> reaped financially from their predatory practices upon
> Plaintiff's (sic), the court may find that the loan
> agreement and trust deed are unconscionable and of no
> force or effect.

*Id.* ¶ 99.

"Unconscionability" is generally a defense to the enforcement of a

28

contract, and is not a proper claim for affirmative relief. *See, e.g.*, *Gaitan v. Mortg. Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 829 (Or. App. 2005) ("[U]nconscionability is not a basis for a separate claim for relief."); *see also Barnard v. Home Depot U.S.A., Inc.*, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law or the UCC allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part of a different -- that is, independent -- cause of action, such a claim "is asserted to prevent the enforcement of a contract whose *terms* are unconscionable." *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[9] *Skaggs* dismissed a "claim" for unconscionability because

---

[9] In *Skaggs*, this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing *Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006)). The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action. Even in *Thompson*, the operative complaint did not assert a separate *count* for rescission or unconscionability. *See Thompson*, 111 Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under HRS 480-2). In *Thompson*, the remedy of rescission was based on an independent claim.

it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not any specific contractual term.  *Id.*  Likewise, Count IX fails to challenge any particular term as unconscionable in an affirmative claim where the unconscionable terms may be relevant to that particular claim.  Further, as to Old Republic, it was not part of the contract process but rather only the escrow agent.

Accordingly, Count IX is DISMISSED with leave to amend as to all Defendants except Old Republic.  The claim against Old Republic is dismissed without leave to amend.

## I.      Count X -- Predatory Lending

MERS and Old Republic also challenge Count X entitled "Predatory Lending."  Count X repeats a variety of allegations (*e.g.*, failure to disclose terms and conditions or material facts, targeting of unsophisticated persons, unfair loan terms, and improper underwriting) that form the basis of other causes of action.

Courts, however, have found that there is no common law claim for "predatory lending."  *See Haidar v. BAC Home Loans Servicing, LP*, 2010 WL 3259844, at *2 (E.D. Mich. Aug. 18, 2010) (agreeing that "there is no cause of action for predatory lending"); *Pham v. Bank of Am., N.A.*, 2010 WL 3184263, at

*4 (N.D. Cal. Aug. 11, 2010) ("There is no common law claim for predatory lending"). To the extent such "predatory" practices provide a claim for relief, they appear to be grounded in another statutory or common-law cause of action such as fraud -- the term "predatory lending" is otherwise too broad. *See Vissuet v. Indymac Mortg. Servs.*, 2010 WL 1031013, at *3 (S.D. Cal. Mar. 19, 2010) (dismissing claim for "predatory lending" with leave to amend -- agreeing that the term is expansive and fails to provide proper notice, where Defendants "are left to guess whether this cause of action is based on an alleged violation of federal law, state law, common law, or some combination"); *see also Hambrick v. Bear Stearns Residential Mortg.*, 2008 WL 5132047, at *2 (N.D. Miss. Dec. 5, 2008) (dismissing a claim for predatory lending where plaintiffs failed to cite any "[state] or applicable federal law, precedential or statutory, creating a cause of action for 'predatory lending.' The court is unaware of any such cause of action.").

The court finds these authorities persuasive. Count X fails to state a cause of action. The court does not mean to imply that "predatory lending" is proper and cannot form the basis of some cause of action. But Hawaii courts have not recognized "predatory lending" itself as a common-law cause of action, and the precise elements of such a claim are undefined. The ambiguous term "predatory lending" potentially encompasses a wide variety of types of alleged wrongdoing.

Recognizing a cause of action here would thus fail to provide proper notice. *See Vissuet*, 2010 WL 1031013, at *3.

Accordingly, Count X is DISMISSED with leave to amend to allow an opportunity for Plaintiffs to attempt to state a cause of action based on specific activities (which others might otherwise describe as "predatory") under a recognized statutory or common-law theory as to all Defendants except Old Republic. The dismissal as to Old Republic is without leave to amend because as an escrow agent, Old Republic was not involved in the transaction as a lender and therefore its acts will not support such claim.

## J.     Count XI  -- Quiet Title

Count XI alleges that Defendants have "no legal or equitable right, claim, or interest in the Property," Compl. ¶ 113, and therefore Plaintiffs are entitled to a declaration that "the title to the Subject Property is vested in Plaintiff's (sic) alone[.]"  *Id.* ¶ 114.

The court infers that Plaintiffs are making a claim under HRS § 669-1(a) ("[Quiet title] [a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim.").  The court agrees with MERS and Old Republic that Plaintiffs have not alleged sufficient facts

regarding interests of various parties to make out a cognizable claim for "quiet title." Plaintiffs have merely alleged elements of § 669-1, and thus the Count fails to state a claim. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness. "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, --- F. Supp. 2d ----, 2010 WL 3155808, at *20 (N.D. Cal. Aug. 9, 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009). "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Id.* (applying California law -- *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707, 33 Cal. Rptr. 2d 288, 290 (1994) ("a mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)).

Applying this law here, which the court finds persuasive, Plaintiffs

have not indicated that they have paid their outstanding loan balance, much less that they are able to do so.  In short, they fail to state a claim for quiet title.

Accordingly, Count XI is DISMISSED with leave to amend as to all Defendants except Old Republic.  As to Old Republic, this dismissal is without leave to amend because as an escrow agent, it is not asserting any right to the subject property.

## K.    Count XII -- Lack of Standing (MERS)

Count XII, entitled "Lack of Standing; Improper Fictitious Entity" fails to state a claim because a claim for "lack of standing" makes no sense against a defendant.  Rather, standing is a requirement for a plaintiff in order to proceed in a lawsuit.

Count XII alleges generally that MERS is an "artificial entity" "designed to circumvent certain laws and other legal requirements dealing with mortgage loans."  Compl. ¶ 118.  Plaintiffs assert that an assignment of the note or mortgage to MERS is illegal, *id.* ¶ 119, and therefore "MERS has no legal standing to foreclose."  *Id.* ¶ 122.  Plaintiffs appear to be alleging that MERS may not foreclose, or has improperly foreclosed, because it is not a holder of the note.  If this is the purpose of Count XII, the court will allow Plaintiffs an opportunity to clarify the factual allegations as to MERS, but not to do so as now written in this

Count.  Plaintiffs may, if appropriate, attempt in an Amended Complaint to assert alleged illegalities as to MERS' status in an independent cause of action -- not in a count entitled "Lack of Standing; Improper Fictitious Entity."

Accordingly, Count XII is DISMISSED with leave to amend as to MERS only.

## L.    Plaintiffs' Opposition

Plaintiffs filed an Opposition to MERS' and Old Republic's Motions, but it is largely unhelpful because it fails to address the specific claims of the Complaint.  Instead, the Opposition asserts in conclusory fashion that the pleadings are sufficiently detailed to give notice to Defendants and that equitable remedies can exist even where claims are otherwise time-barred.  Contrary to Plaintiffs' assertions, as explained above, the allegations in the Complaint do not meet the *Iqbal* requirements of including "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  Further, Plaintiffs are mistaken in their assertion that they can receive equitable relief where they cannot state a valid claim for relief.  The court therefore rejects that Plaintiffs' Opposition raises any argument that counters the analysis above explaining why each of the claims of the Complaint must be dismissed.

Further, after the hearing, Plaintiffs filed an "Affidavit" on March 8, 2011. To the extent this Affidavit is directed to Defendants' Motion to Dismiss, it is improper -- Plaintiffs may not file additional documents in support of this Motion without leave of court. Even considering this Affidavit, however, it does not change the analysis above. In their Affidavit, Plaintiffs express frustration regarding how long the loan modification process takes, and assert that Defendants have committed fraud in foreclosing on the subject property. As explained above, however, the Complaint does not include a claim for fraud.

The court will nonetheless grant leave for Plaintiffs to include a fraud claim in an amended complaint. Should Plaintiffs choose to file an amended complaint with a fraud claim, they must allege the circumstances of fraud with particularity as required by Federal Rule of Civil Procedure 9(b). Plaintiffs must explain the time, place, and nature of the alleged fraud, and how each Defendant participated in the fraud. *See Destfino v. Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc).

## V. **CONCLUSION**

The Motions are GRANTED and the Complaint is DISMISSED with leave to amend as to specific counts as explained above.

To be clear, Plaintiffs are granted leave to amend as to all Defendants as to Counts V (for violating 12 U.S.C. § 2607, if equitably tolled), VII (for unfair and deceptive trade practices, if equitably tolled), and VIII. Plaintiffs may also bring a separate claim for fraud. Plaintiffs are further granted leave to amend Counts IV (for damages under TILA, if equitably tolled), and IX through XI as to all Defendants except Old Republic, and are granted leave to amend Count XII as to MERS. But Counts I, II, III, IV (for rescission against all Defendants and for damages against Old Republic), V, and VI are DISMISSED *without* leave to amend.

Plaintiffs are GRANTED until April 8, 2011 to file an Amended Complaint attempting to cure the identified deficiencies. If Plaintiffs choose to file an Amended Complaint they must clearly state how each named Defendant has injured them. In other words, Plaintiffs should explain, in clear and concise allegations, what each Defendant did and how those specific facts create a plausible claim for relief. Plaintiffs should not include facts that are not directly relevant to their claims. In other words, to provide proper notice, the Amended Complaint should allege necessary facts against specific Defendants, *i.e.*, tie each claim to a Defendant or specific Defendants and explain how each Defendant is liable. Failure to file an Amended Complaint by April 8, 2011 will result in

automatic dismissal of this action as to all Defendants.

Plaintiffs are also notified that an Amended Complaint supercedes the prior Complaint and must be complete in itself without reference to prior or superceded pleadings. *E.g.*, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted). That is, the Amended Complaint, if any, must stand alone, without reference to prior pleadings or documents in the record.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 10, 2011.



/s/ J. Michael Seabright
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
J. Michael Seabright
United States District Judge

*Marzan et al. v. Bank of Am. et al.*, Civ. No. 10-00581 JMS/BMK, Order: (1) Granting Defendant Old Republic Title & Escrow of Hawaii, Ltd.'s Motion to Dismiss; (2) Granting Defendant Mortgage Electronic Registration System's Motion to Dismiss; (3) Dismissing Other Claims; and (4) Granting Leave to Amend